UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| LUVERNE TRUCK EQUIPMENT, INC., a Minnesota Corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>WORLDWIDE EQUIPMENT, INC., a Kentucky Corporation,<br><br>    Defendant. | 4:15-CV-04115-KES<br><br><br>MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS AND MOTION TO TRANSFER VENUE |

Plaintiff, Luverne Truck Equipment, Inc., filed suit against defendant, Worldwide Equipment, Inc., asserting claims for trade dress infringement under 15 U.S.C. § 1125(a), trade dress dilution under 15 U.S.C. § 1125(c), false designation of origin under 15 U.S.C. § 1125(a), and unfair competition. Docket 1. Worldwide moves to dismiss the complaint for lack of personal jurisdiction and improper venue and, alternatively, moves to transfer venue to the Eastern District of Kentucky. Docket 7. Luverne opposes the motions. For the following reasons, Worldwide's motions are denied.

## BACKGROUND

Construing the facts in a light most favorable to the non-moving party, Luverne, the facts are as follows:

Luverne is a corporation organized under the laws of Minnesota, and its principal place of business is Brandon, South Dakota. Docket 1 at 1. Luverne

conducts business under the trade names of "Luverne Truck" and "Retrac." It manufactures and sells automobile and truck accessories. *Id.*

Worldwide is a corporation organized under the laws of Kentucky, and its principle place of business is Prestonsburg, Kentucky. *Id.* Worldwide leases, sells, and services medium and heavy-duty trucks and truck accessories. Docket 8 at 2. Worldwide has purchased products from Luverne since 2010. Docket 12 at 3.

This dispute revolves around a product called the TUFF GUARD. The TUFF GUARD is a grille guard for mid-sized trucks and semi tractors. *Id.* at 2. According to Luverne, Worldwide issued purchase orders for this product and its accessories on 73 different occasions from March 2012 until July 2015.[1] *Id.* at 4. The purchases were made on credit after Worldwide completed Luverne's credit application. *Id.* at 3.

In July 2015, Worldwide began ordering mounting brackets for the TUFF GUARD without ordering the guard itself. *Id.* at 5. Luverne alleges that Worldwide began manufacturing and selling a "copycat" grille guard that is indistinguishable from the TUFF GUARD. Worldwide allegedly mounted the copycat grille guard to trucks using TUFF GUARD mounting brackets. This alleged manufacturing and sales scheme is the foundation of Luverne's complaint against Worldwide.

---

[1] It appears that Worldwide contacted Luverne directly to initiate the sales transaction on roughly 40 occasions, and that Worldwide issued purchase orders and sent payment through a third party purchasing agent on roughly 30 occasions. *See* Docket 15 at 5-6.

2

**STANDARD OF REVIEW**

When reviewing a motion under Rule 12(b)(2), the court must view the facts in a light most favorable to the party opposing the motion. *Aaron Ferer & Sons Co. v. Diversified Metals Corp.*, 564 F.2d 1211, 1215 (8th Cir. 1977) (citing *Block Indus. v. DHJ Indus. Inc.*, 495 F.2d 256, 259 (8th Cir. 1974)). The party asserting jurisdiction must make a prima facie showing that personal jurisdiction exists and that the opposing party can be subjected to jurisdiction within the forum state. *K–V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591–92 (8th Cir. 2011). The court can consider the pleadings, affidavits, exhibits, or other evidence when deciding whether a prima facie showing has been made. *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004). "While the plaintiff[] bear[s] the ultimate burden of proof, jurisdiction need not be proved by a preponderance of the evidence[.]" *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003) (citing *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991)).

**DISCUSSION**

I.  **The Court has Personal Jurisdiction over Worldwide.**

In a diversity action, the court " 'may assume jurisdiction over nonresident defendants only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause.' " *Romak USA, Inc. v. Rich*, 384 F.3d 979, 987 (8th Cir. 2004) (quoting *Dever*, 380 F.3d at 1073). South Dakota's long arm statute asserts jurisdiction to the full reach of the due process clause. *See* SDCL 15-7-2(14); *see also Austad Co. v. Pennie &*

*Edmonds*, 823 F.2d 223, 225 (8th Cir. 1987). Thus, for the court to assert jurisdiction over Worldwide, it must determine whether the exercise of jurisdiction comports with the mandates of the due process clause. *See Larson Mfg. Co. of South Dakota v. Connecticut Greenstar, Inc.*, 929 F. Supp. 2d 924, 926 (D.S.D. 2013) (citing *Dakota Indus., Inc. v. Ever Best Ltd.*, 28 F.3d 910, 915 (8th Cir. 1994)).

"Due process mandates that jurisdiction be exercised only if [the] defendant has sufficient 'minimum contacts' with the forum state, such that summoning the defendant to the forum state would not offend 'traditional notions of fair play and substantial justice.' " *Digi–Tel Holdings, Inc. v. Proteq Telecomms., Ltd.,* 89 F.3d 519, 522 (8th Cir. 1996) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). Analyzing the "minimum contacts" requirement depends on whether the court's jurisdiction over a party is said to be specific or general. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–15 (1984). A forum may exercise specific jurisdiction when the cause of action is "arising out of or related to the defendant's contacts with the forum[.]" *Id.* at 414. By contrast, general jurisdiction may be asserted when a defendant's contacts with the forum are said to be sufficiently " 'continuous and systematic' as to render [the defendant] at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 131 S. Ct. 2846, 2851 (2011). "Both theories of personal jurisdiction require 'some act by which the defendant purposely avails itself of the privilege of conducting activities within

4

the forum State, thus invoking the benefits and protections of its laws.' " *Dever,* 380 F.3d at 1073 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253 (1958)).

The Eighth Circuit Court of Appeals has established a five factor test for evaluating whether a defendant has minimum contacts with the forum state:

> (1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.

*Wells Dairy, Inc. v. Food Movers Int'l, Inc.,* 607 F.3d 515, 518 (8th Cir. 2010) (citing *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 819 (8th Cir. 1994)). Because the first three factors are interrelated, the court can consider them together. *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.,* 51 F.3d 1383, 1388 (8th Cir. 1995). The fourth and fifth factors are less important in the analysis. *Dever*, 380 F.3d at 1074. The court finds that Worldwide does not have contacts with South Dakota to the extent necessary to assert general jurisdiction over it. Thus, the issue is whether Worldwide has sufficient contacts with South Dakota that enables the court to exercise specific jurisdiction over Worldwide.

Worldwide argues that its contacts with South Dakota are well below the level necessary for the court to exercise specific jurisdiction over it. Because its contacts are limited to purchasing products from a business located in South Dakota, Worldwide believes that these commercial transactions are insufficient grounds upon which a court can exercise specific jurisdiction. Worldwide urges the court to hold that the assertion of specific jurisdiction requires further

5

intentional conduct of the defendant like the defendant's physical presence in the forum or the defendant sending materials into the forum to aid the manufacturing process. Docket 8 at 8-9.

As support for its position, Worldwide cites *Bell Paper Box, Inc. v. Trans Western Polymers, Inc.*, 53 F.3d 920, 921-22 (8th Cir. 1995). In *Bell*, the court found that insufficient contacts to establish jurisdiction existed when an out-of-state buyer merely purchased a product and never entered the forum state. *Bell*, 53 F.3d at 921. The buyer had entered into a purchase agreement with a manufacturer and sent films to the manufacturer's forum state to ensure the final product was the appropriate color scheme. *Id.* Despite the fact that the defendant sent material to the forum state, the Eighth Circuit held that there were insufficient contacts for specific jurisdiction. *Id.* at 922. Worldwide argues that the same rationale applies here because it only purchased products from a business in South Dakota, and it did so without sending any material to assist with production.

Worldwide also cites *Watlow Electric Manufacturing, Co. v. Patch Rubber Co.*, 838 F.2d 999 (8th Cir. 1988), as an example of the level of contacts necessary for a finding of specific jurisdiction. Docket 8 at 8. The buyer in *Watlow* requested a catalogue from the seller, sent raw materials to the forum state for the manufacturing process, and had a representative of the corporation attend a meeting and tour the production facility in the forum state. *Id.* (citing *Watlow*, 838 F.2d at 1000). According to Worldwide, the

combination of contacts exemplified in *Watlow* is far beyond the contacts that Worldwide exhibits with South Dakota.

     Finally, Worldwide argues that the contacts analyzed by this court must be limited to Worldwide's contacts with the forum itself, not a plaintiff located in the forum. In support of this argument, Worldwide cites *Nichols v. MMIC Insurance Inc.*, 68 F. Supp. 3d 1067, 1076 (D.S.D. 2014), and *Scullin Steel Co. v. National Railway Utilization Corp.*, 676 F.2d 309, 314 (8th Cir. 1982). In *Nichols,* this court found that a defendant physician had insufficient contacts with South Dakota for specific jurisdiction. *Nichols*, 68 F. Supp. 3d at 1078. The court found insufficient contacts because the alleged medical malpractice occurred in Nebraska, and the only contacts that the physician exhibited with South Dakota were achieved through follow-up phone calls to the plaintiff and phone calls to pharmacies in the state. *Id.* at 1076-1077. In *Scullin*, the Eighth Circuit Court of Appeals found that the process of negotiating and forming a contract through phone calls and the mail was insufficient for establishing minimum contacts. *Scullin,* 676 F.2d at 311. According to Worldwide, *Nichols* and *Scullin* establish that a finding of minimum contacts requires that a defendant have connections to the forum state that exist outside of its communication with the plaintiff. Because its only connection to South Dakota is through communication with Luverne, Worldwide believes that *Nichols* and *Scullin* provide further support for its position that it lacks minimum contacts with the forum state.

In response, Luverne asserts that Worldwide's argument relies upon the false premise that physical presence is required in the forum as a prerequisite to specific jurisdiction. Luverne states that the opposite is true and cites an opinion from the United States Supreme Court, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985), to support its position:

> Jurisdiction in these circumstances may not be avoided merely because the defendant did not physically enter the forum State. Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there . . . So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.

Docket 12 at 11 (quoting *Burger King Corp.*, 471 U.S. at 476).

Luverne argues that *Burger King* provides sufficient precedent for this court to determine whether the extensive transactions between Worldwide and Luverne create sufficient contacts for specific jurisdiction. In support of this argument, Luverne states that the Eighth Circuit precedent cited by Worldwide does not contradict *Burger King*. Luverne claims there is no contradiction because the precedent cited by Worldwide is much more constrained than what Worldwide suggests. Luverne cites one section of *Bell* in particular: "[m]erely entering into *a* contract with a forum resident does not provide the requisite contacts." Docket 12 at 12 (emphasis in original) (quoting *Bell*, 53 F.3d at 922). Luverne's position is that *Bell*, and much of the other precedent cited by Worldwide, establishes that even though one commercial transaction is

8

insufficient for specific jurisdiction, the transaction is nonetheless a relevant link to the forum in the minimum contacts analysis.

With foundation established for the position that a commercial transaction constitutes a connection to the forum state, Luverne relies heavily on *Wells Dairy, Inc. v. Food Movers International, Inc.*, 607 F.3d 515 (8th Cir. 2010). In *Wells Dairy*, the Eighth Circuit found that a California buyer had sufficient contacts for the court to exercise specific jurisdiction over the defendant. *Id.* at 520. The court noted that the buyer initiated the sales transactions, the buyer faxed more than 100 purchase orders to the seller, and the buyer purchased the product on credit. *Id.* at 517. Luverne argues that *Wells Dairy* is very similar to the transactions between Luverne and Worldwide because Worldwide is the entity that initiated the business relationship, Worldwide issued over 70 purchase orders to Luverne, and Worldwide completed its purchases on credit. Based on these similarities, Luverne argues that *Wells Dairy* provides adequate precedent for the court to assert specific jurisdiction here. The court finds this argument persuasive.

While Worldwide cites valid case law, it construes the precedent to argue that the assertion of specific jurisdiction demands that a commercial buyer have contacts with the forum state that are independent from its telephonic or electronic contact with the seller. Without a physical presence in the forum or sending materials to the forum, Worldwide believes specific jurisdiction is lacking. The court disagrees with this position. Not only has the Supreme Court consistently dispelled the notion that physical presence in the forum is

required to establish minimum contacts, *see Burger King,* 471 U.S. at 476, but recent Supreme Court precedent also runs contrary to Worldwide's position.

In *Walden v. Fiore*, 134 S. Ct. 1115 (2014), the Supreme Court clarified the proper considerations in a minimum contacts analysis. The Court affirmed that "[it has] upheld the assertion of jurisdiction over defendants who have purposefully 'reach[ed] out beyond' their State and into another by, for example, entering a contractual relationship that 'envisioned continuing and wide-reaching contacts' in the forum state." *Id.* at 1122 (quoting *Burger King,* 471 U.S. at 479-80).

The Court also resolved the factors that should be considered when the plaintiff is the defendant's only connection to the forum state. *Walden,* 134 S. Ct. at 1123. After stating the "plaintiff cannot be the only link between the defendant and the forum," the Court cited to *Kulko v. Superior Court of California*, 436 U.S. 84, 93 (1978). *Walden,* 134 S. Ct. at 1123. In *Kulko*, the Supreme Court declined to recognize personal jurisdiction over a father because his only connection to California was through his ex-wife and daughter who had recently moved there. *Kulko,* 436 U.S. at 93. The father's connection to California was entirely passive. *Id.* The Court's citation to *Kulko* highlights that a proper minimum contacts analysis must consider whether the "defendant's conduct … form[s] the necessary connection with the forum State[.]" *Walden,* 134 S. Ct. at 1123. "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by

interacting with other persons affiliated with the state." *Id.* (citing *Burger King*, 471 U.S. at 475). As detailed in *Walden*, proper minimum contacts analysis considers only the connections created by a defendant's conscious decision to reach out to a forum state, including the decision to enter into a contractual relationship.

Viewing the facts in a light most favorable to Luverne, there is nothing random, fortuitous, or attenuated about Worldwide's contacts with South Dakota. Worldwide reached out to Luverne in South Dakota to purchase the TUFF GUARD and other products. After submitting a credit application, Worldwide, or its agents, issued roughly 70 different purchase orders over a four year period. This factual background and purchasing structure is strikingly similar to the scenario that the Eighth Circuit found sufficient for specific jurisdiction over the defendant in *Wells Diary*.

But in order for this court to exercise specific jurisdiction, it must also determine that the cause of action arises out of, or is related to, Worldwide's contacts with South Dakota. *Helicopteros,* 466 U.S. at 414. Luverne alleges that Worldwide initiated an ongoing relationship where it consistently purchased the TUFF GUARD on credit, and then utilized that product to manufacture a copycat version. While producing and selling the copycat product, Luverne also alleges that Worldwide continued to purchase TUFF GUARD mounting brackets to affix the copycat product to its customer's trucks. Worldwide allegedly continued to reach out to the forum as an integral

11

step in producing and selling its copycat product. Thus, the cause of action is related to Worldwide's contacts with South Dakota.

In the modern business climate, it is no longer necessary for companies to conduct business in a face-to-face setting. Technology permits businesses to create business contacts and form new contracts without ever meeting in person. The four-year business relationship between Luverne and Worldwide shows as much. Based on the wealth of transactions found in this modern-era business relationship, and giving consideration to Worldwide's conscious decision to reach out to the forum state both before and after production of the supposed copycat product, the court finds that Luverne has made a prima facie case that Worldwide has minimum contacts with South Dakota. Thus, the assertion of specific jurisdiction over Worldwide complies with the mandates of the due process clause. Worldwide's motion to dismiss based on a lack of personal jurisdiction is denied.

**II.     The District of South Dakota is a Proper Venue for the Litigation.**

Worldwide moves to dismiss the complaint for improper venue and, alternatively, moves to transfer venue to the Eastern District of Kentucky. In support of its motion, Worldwide cites the facial invalidity of Luverne's complaint as it pertains to venue, and it argues that the District of South Dakota is an inconvenient venue for this litigation.

**A.     Motion to Dismiss the Complaint.**

Worldwide urges the court to find that the District of South Dakota is an improper forum by citing Luverne's complaint. Luverne's complaint relies upon

28 U.S.C. § 1391(b)(3) to establish that venue is proper in this district. Docket 1 at 2. Section 1391(b)(3) is the catch-all provision of the venue statute and authorizes the bringing of a civil action: "if there is no district in which an action may otherwise be brought as provided in this section, [in] any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b)(3). Worldwide contends that Luverne's citation to the catch-all provision is not only incorrect but also shows that South Dakota is an improper forum because the action could easily have been filed in the Eastern District of Kentucky, where Worldwide resides.

Luverne responds by stating that it should have cited subsection (1) of section (b) of the venue statute. Section 1391(b)(1) establishes that a civil action may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). Luverne also cites 28 U.S.C. § 1391(c)(2), which provides the following:

> an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such a defendant is subject to the court's personal jurisdiction with respect to the civil action in question[.]

28 U.S.C. § 1391(c)(2). Therefore, "a defendant is 'deemed to reside [for venue purposes] in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.' " *Dakota Sportswear*, 946 F.2d at 1392 (8th Cir. 1991) (alterations in original) (quoting 28 U.S.C. § 1391(c)).

Because the court finds that it can exercise personal jurisdiction over Worldwide, it also finds that the District of South Dakota is a proper venue for this action. Therefore, the issue is whether Luverne's failure to cite the proper statute provides a basis for dismissing the complaint. Worldwide has not offered any authority in support of dismissing the complaint based on the improper citation.

Luverne argues that its failure to cite the proper statute is immaterial because the allegation of improper venue is merely an affirmative defense. Docket 12 at 20. Luverne cites *Catholic Order of Foresters v. U.S. Bancorp Piper Jaffray, Inc.*, 337 F. Supp. 2d 1148, 1158 (N.D. Iowa 2004), to support this position. In *Catholic Order*, the district court stated the following:

> [I]n contrast to pleading requirements for jurisdiction, [a] plaintiff is not required to include in his complaint allegations showing that venue is proper in the district in which the suit has been brought . . . Since improper venue is a matter of defense, it is not necessary for plaintiff to include allegations showing the venue to be proper.

*Id.* at 1158 (internal citations omitted). The court adopts this rationale. Despite Luverne's failure to cite the proper subsection of the venue statute, it has alleged sufficiently that Worldwide is subject to personal jurisdiction in this district. Thus, the motion to dismiss the complaint on account of an improper citation relating to venue is denied.

    **B.**    **Motion to Transfer Venue.**

Worldwide relies upon 28 U.S.C. § 1404(a) to support its motion. Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or

14

division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The Eighth Circuit Court of Appeals has "declined to offer an 'exhaustive list of specific factors to consider' in making the transfer decision[.]" *In re Apple*, Inc. 602 F.3d 909, 912 (8th Cir. 2010) (quoting *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 693 (8th Cir. 1997)). Instead, "district courts should weigh any 'case-specific factors' relevant to convenience and fairness to determine whether transfer is warranted." *Id.* (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). "In general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted." *Terra Int'l*, 119 F.3d at 695.

Worldwide argues generally that transferring venue to the Eastern District of Kentucky will be more convenient for witnesses and the parties. Because this dispute stems from the alleged production and sale of a copycat grill, Worldwide believes the necessary witnesses will be located in the area where it sells the product. While there may be necessary witnesses in the areas where the product is marketed, Worldwide has failed to support this assertion with any specificity other than offering a limited representation of where it markets its products. Because Worldwide has failed to provide sufficient support for its argument, the court should give deference to Luverne's choice of forum. Thus, Worldwide's motion to transfer venue is denied.

**CONCLUSION**

Prior to this dispute, Worldwide issued over 70 separate purchase orders to Luverne over a four year period. These purchases all relied upon Luverne extending credit to Worldwide. Because this dispute is interrelated with the wealth of transactions associated with the TUFF GUARD, the court finds that Worldwide has sufficient contacts with South Dakota for the court to exercise specific jurisdiction over it.

As to the motion to transfer venue, Worldwide failed to cite sufficient support to overcome the heavy presumption that a court should give deference to a plaintiff's choice of forum. Thus, it is

ORDERED that Worlwide's motion to dismiss for a lack of personal jurisdiction (Docket 7) is DENIED. It is

FURTHER ORDERED that Worldwide's motion to dismiss for improper venue and, alternatively, to transfer venue is DENIED.

Dated March 24, 2016.

>BY THE COURT:
>
>/s/ *Karen E. Schreier*
>KAREN E. SCHREIER
>UNITED STATES DISTRICT JUDGE